SEXTON, Judge.
Plaintiff, Debra K. Frederick, appeals a jury’s rejection of her personal injury claims following a rear-end automobile collision. We affirm.
On April 15, 1982, plaintiff and her two children were passengers in a vehicle being driven by Kathy Lacobee. Plaintiff was seated in the front passenger side and was holding her 4-V2 month old baby, Starla Teshonia Frederick. Beside plaintiff in the middle of the front seat was David Weak-ley, who was holding plaintiffs four year old daughter, Twyla Kay. The Lacobee vehicle was proceeding in a northerly direction on Mansfield Road in Shreveport, Louisiana, when a car in front of this vehicle slowed abruptly, causing Lacobee to put on her brakes. The vehicle was then struck from the rear by a car driven by defendant, Gracie Wright.
Shreveport police officer Frank Datcher testified that immediately after the accident the plaintiff stated that neither she nor her children were injured. He further testified that the accident was not a straight-on rear-end collision. Rather, the Wright vehicle only hit the right rear-end of the Lacobee vehicle. Defendant Wright was injured in the accident and received nine stitches. No one in the Lacobee vehicle besides plaintiff and her children claimed injury as the result of this accident.
Plaintiff testified at trial that although she told the police officer that neither she nor her children were hurt, she began to experience mild pain after the wreck. She stated that the pain started to increase the next day. Plaintiff testified that her daughter Twyla complained of pain the next day, and that the child Starla woke up crying the night of the accident. Plaintiff also testified that she had problems with her hips following the accident and that she experienced shooting pains in her legs, knees and left foot beginning a week or two after the wreck, although she was unsure of the exact date of the onset of these pains.
Eight days after this accident, plaintiff went to see a chiropractor, Dr. Paul Johnston. Dr. Johnston treated the plaintiff almost daily for approximately five months between April 13, 1982 and August 20, 1982, for a total of 86 treatments. He testified that the plaintiff complained of low back and neck pain and headaches in the base of the skull. His examination of plaintiff revealed that she had a less than normal range of motion. His x-rays revealed misalignments of the spine in several places. He testified that these findings were consistent with trauma sustained in an auto accident. Dr. Johnston also treated the plaintiff’s two children. He treated 4-V2 month old Starla 78 times for sleeping, irritability, diarrhea and upset stomach. He also treated plaintiff's four year old Twyla 79 times for neck pain and headaches.
Plaintiff and her two children subsequently saw another chiropractor, Dr. Ernest Whitman. He testified the plaintiff was having back and neck pains and concluded that these pains were consistent with a rear-end collision. He found 13 different misalignments in the plaintiff’s spine. However, none of these misalign-ments matched those found by Dr. Johnston. He also treated the plaintiff’s two children by adjusting their spines. His treatment of plaintiff and her two children lasted until the end of September, for a total of two months.
As a result of the accident, plaintiff, individually and as tutrix for her two minor children, sued Gracie Wright and her insurer, Allstate Insurance Company. Plaintiff later amended her complaint to state a cause of action against Kathy Lacobee and her insurer, Shelter Mutual Insurance Company.
In special interrogatories the jury found defendant Wright one hundred percent at fault but found that the plaintiff and her children did not suffer any injury as a result of the accident.
*1058 On appeal, plaintiff specifies three errors: (1) that the jury erred in disregarding the expert testimony of the two chiropractors who treated Debra Frederick and her two minor children; (2) that the jury erred in refusing to render judgment in favor of Debra Frederick for the medical expenses incurred; and (3) that the jury erred in making no award for pain and suffering endured by Debra Frederick and her two minor children.
Plaintiff cites and relies upon Druilhet v. Trinity Universal Insurance Company, 361 So.2d 40 (La.App. 3d Cir.1978), writ refused 363 So.2d 535 (La.1978), for the proposition that when there is no intervening cause between the accident and the injury and a patient acts reasonably in choosing a particular course of treatment, charges, even for improper treatment or overtreatment, remain a proper item of damages. It is the tort-feasor rather than the tort victim who bears the expense.
Thus, plaintiff claims that the jury was clearly wrong in failing to award damages for the chiropractic treatments incurred by herself and her children.
Although plaintiff has couched the issue in those terms, we are not called upon in this instance to assess the validity of Druilhet v. Trinity Universal Insurance Company, supra, and similar jurisprudence. The jury in this case found that neither plaintiff nor her children had suffered an injury. Thus, the threshold issue is whether the jury was clearly wrong in this finding and their inherent finding that the testimony of the chiropractors was less credible than the defense experts.
At trial, defense counsel presented the testimony of three medical doctors to refute the plaintiffs claim. Dr. Eugene E. Patterson, a diagnostic radiologist, testified that he saw no abnormalities or misalign-ments in x-rays of the plaintiffs spine. However, he admitted that x-rays would not ordinarily reveal a soft tissue injury, disc injury or torn ligaments.
Dr. Amos L. Wedgeworth, a pediatrician, testified that he had never seen children from four months to three years with a whiplash type injury or misalignment of the spine. Dr. Wedgeworth explained that whiplash could not mechanically happen to a child because in an accident a child rebounds against the surface of the seat. Therefore, a child does not suffer hyperex-tension of the neck over the back of the seat. The doctor also stated that he would not expect the child to be injured from flexion or forward action. Dr. Wedge-worth also contradicted plaintiffs chiropractic testimony that misalignments could be detected by palpation of the spine. Neither Dr. Patterson nor Dr. Wedgeworth ever saw the plaintiff or her two children in person.
Dr. Don K. Joffrion, an orthopedic surgeon, testified that he saw the plaintiff on September 29, 1982. He also examined Dr. Johnson’s x-rays of Ms. Frederick but found no subluxations, misalignments, or abnormalities of the spine. He testified that the plaintiff appeared to be in no pain. Dr. Joffrion stated that her neck was normal except for some tenderness in the mid portion. However, the doctor discovered that plaintiffs assertions of the point of tenderness varied in repeated examinations. He found a normal range of motion and equal leg length. This testimony contradicted the testimony of Dr. Whitman, the second chiropractor who examined the plaintiff, who found a significant disparity in the length of her legs. Dr. Joffrion also testified that the patient complained of tenderness in the mid-lumbar region but again, the doctor noticed that the point of tenderness varied from examination to examination. Dr. Joffrion opined that plaintiff was not injured when he saw her.
Dr. Joffrion also examined Twyla and Starla. The doctor noted that the chiropractor had told the mother that both children had neck and back injuries. Dr. Jof-frion stated that Twyla behaved as a normal child and that an examination of her spine revealed full range of motion. He found no evidence of muscle spasm or deformity and no tenderness to palpation. His examination revealed that her entire spine was supple and her extremities were *1059 normal. He also stated that there was no sign of residual impairment. Dr. Joffrion found Starla to be an active child, healthy in appearance. The doctor stated that Starla was able to play quite vigorously, laughing and responding normally. He found no evidence of tenderness of her spine and no muscle spasm. Her motions were symmetrical and supple. The doctor found no evidence of injury or residual physical impairment in this child.
Dr. Joffrion was told by defense counsel that Ms. Frederick was seen the day after his examination by Dr. Whitman, who determined that plaintiff had a foot and knee out, a disc out, and five misaligned vertebrae. Dr. Joffrion categorically disagreed with that diagnosis, noting that plaintiff did not complain to him about knee or foot pain.
Dr. Johnston’s credibility was seriously undermined at trial. Dr. Johnston testified that he referred out ninety percent of all asthmatic cases because chiropractors generally could not determine subluxation in that area. He stated that the condition was either caused by sinuses or “whatever.” However, Dr. Johnston admitted that he had placed an advertisement in the The (Shreveport) Times on August 15, 1983, stating that “in almost all cases of asthma chiropractors find that there is a slight dislocation of the vertebra in the shoulder. This is the exit point of nerves leading to the bronchial tubes.” Dr. Johnston also stated that he treated plaintiff “on consignment” and further stated that although his bill was presently in excess of $4,200, he had not been paid and that he “felt that he would not be compensated by [plaintiff].” Additionally, it was elicited at trial that a prospective patient of Dr. Johnston’s would be required to fill out a form in case of an accidental injury including questions such as whether as a result of the accident a traffic citation was issued. This form also includes the following language.
Insurance Companies Involved:
My Company_
Company of Person Responsible
For Injuries_
On Debra Frederick’s form, under the space entitled “Company of Person Responsible for Injuries,” she had noted “Allstate Insurance Company.” The doctor admitted that on this form he had noted at the top of the page “hit from rear”; at the bottom of the page, the doctor had written “Grade Wright, Allstate Rep: Dan Cobb.”
After hearing the evidence, the jury concluded that the plaintiff had failed to prove an essential element of her cause, i.e., that she and her children sustained injury in the automobile collision. We agree. It is significant that plaintiff sought no form of medical attention until eight days after the accident. Plaintiff presented neither medical nor lay testimony other than her own, that she indeed suffered pain during the eight day interval between the accident and the chiropractic care. As such, we find no clear error in the jury’s finding. Having thus concluded, we must underscore that we do not pass upon the validity of chiropractic care val non, nor do we treat the issue of medical overtreatment of a plaintiff.* We merely affirm the jury’s finding that plaintiff failed to prove that she was injured from the fault of the defendant.
Consequently, the judgment of the trial court is affirmed. All costs of these appellate proceedings are assessed against plaintiff.
AFFIRMED.

 See and compare Tyler v. Richardson, 476 So.2d 899 (La.App.2d Cir.1985), citing Druilhet v. Trinity Universal Insurance Company, supra, relied on by plaintiffs herein and Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir.1972), which appears to have originated the concept of the tort-feasor’s responsibility for overtreatment; and other citations contained therein.